

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIDFIRST BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 03 C 4975 |
| vs. ) | |
| ) | Magistrate Judge Schenkier |
| SHEILA CURTIS and ) | |
| LATASHA CURTIS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This mortgage foreclosure action is before the Court pursuant to the consent of the parties (doc. # 34). On July 18, 2003, plaintiff Midfirst Bank filed a complaint for mortgage foreclosure (doc. # 1). The complaint alleged that defendants Sheila and Latasha Curtis were in default on their mortgage debt in the principal amount of $77,756.90 (with interesting accruing at a rate of $17.04 each day) on property located at 5043 W. Chicago Avenue, Chicago, Illinois ("the Property"). On April 26, 2005, the presiding district judge entered an amended judgment of foreclosure in the amount of $94,271.06 (doc. # 12). The amended judgment provided for a redemption period to extend through June 27, 2005. The Curtisses did not redeem the property by paying the judgment amount during that redemption period.

Accordingly, a Special Commissioner was appointed, and the Property was offered for sale at a public auction. The Special Commissioner has stated that the Property was offered for sale on May 23, 2006 at the Front Door of the Cook County Building, Inside Entrance, 118 N. Clark Street, Chicago, Illinois at approximately 3:00 p.m., and that Emdadul Haque and Mohammed Bakey Billah were the successful bidders at the sale with an offer of $64,224.00. The Special Commissioner has

moved for the court to approve the sale to those bidders, to grant them possession of the Property, and to approve the distribution of proceeds (doc. # 24).

Mohna, Inc. claims that it wanted to bid on the Property, but was prevented from doing so because the Property was not in fact offered for public sale on the date and/or place asserted by the Special Commissioner. Mohna has been given leave to intervene in the case (doc. # 26), and has filed a motion opposing confirmation of the sale (doc. # 28). The motion has drawn responses from both Midfirst (doc. # 29) and Messrs. Haque and Billah (doc. # 31), both seeking approval of the sale. All of those filings raise the question of what the notice disclosed about the time and place of the sale, and whether the sale took place at the time and place so indicated. The Court has set the matter for hearing on the Special Commissioner's motion and Mohna's opposing motion for October 19, 2006.[1]

The present issue before the Court arises from an oral motion by Mohna's counsel of record, Lamont Strong, to file an additional appearance on behalf of the Curtisses, who have not previously been represented in this case. During a proceeding on September 14, 2006, Mr. Strong explained that he wishes to appear on behalf of the Curtisses to attack the April 26, 2005 judgment of foreclosure. At that time, the Court expressed the concern that this dual representation of Mohna and the Curtisses would create a conflict of interest. In representing the Curtisses, Mr. Strong would seek to persuade the Court that the foreclosure judgment should be lifted and they should retain the Property. In representing Mohna, Mr. Strong would seek to persuade the Court that the sale should

---

[1] We note that in response to Mohna's motion, the Special Commissioner attached copies of notices for the sale that appeared in local newspapers indicating a sale date of April 4, 2006 (Special Commm'r Reply, Exs. 1-2) – not on May 23, 2006, the date the Special Commissioner states the sale took place (*Id*, at 2). We expect the Special Commissioner to address that discrepancy at the October 19, 2006 hearing.

2

go forward (which would require that the foreclosure judgment remain in effect) so that Mohna could buy the Property. In short, Mr. Strong would be in a position of representing clients who both want the Property, but both could not have it.

The Court invited Mr. Strong to submit an explanation of why this would not create a clear conflict of interest. On September 21, 2006, Mr. Strong submitted in open court a memorandum in support of the dual representation, which states only in summary fashion that there would not be a conflict, and if there were one, the Curtisses waive the conflict "by affixing their signature to this document." However, the document did not contain their signatures, and said nothing about how Mohna would feel about its attorney taking on a conflicting representation of the Curtisses in this case.

Local Rule 83.51.7(a) states: "A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) each client consents after disclosure." We have little trouble in finding that Mr. Strong's proposed representation of the Curtisses would be "directly adverse to another client" – Mohna. "The classic conflict of interest situation arises when a lawyer represents . . . two clients with opposing interests." *Daniels v. United States*, 54 F.3d 290, 294 (7th Cir. 1995). That is certainly true here, where Mr. Strong seeks to represent both Mohna and the Curtisses, who both want the Property but both cannot obtain it through this action.

Nor is this a case where the patent conflict here can be overcome by consent. At the threshold, we note that Mr. Strong has provided no evidence that Mohna and the Curtisses have purported to waive the conflict, or did so "after disclosure." Moreover, even if Mr. Strong presented

3

evidence of a waiver of the conflict, we would decline to recognize it. The commentary to LR 83.51.7 explains that "when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the clients' consent." This is just such a case. A lawyer owes a duty of loyalty to a client, which includes – among other things – a duty on the part of the lawyer to zealously (but within the bounds of the law and ethical conduct) advance the client's interest. If Mr. Strong were to represent both Mohna and the Curtisses, he could not advance the interests of one client without undermining the interest of the other. No disinterested lawyer could, in good conscience, ask clients to permit a dual representation in those circumstances. *See, e.g., Pearson v. First NH Mortgage Corp.*, 200 F.3d 30, 41 (1st Cir. 1999) ("under the governing ethical rules, some conflicts of interest are considered so fundamental that even an anxious prospective client is deemed incapacitated from providing informed consent").

## CONCLUSION

For the foregoing reasons, we deny Mr. Strong's oral motion for leave to file an appearance on behalf of Sheila and Latasha Curtis.

**ENTER:**

/s/ Sidney I. Schenkier
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: September 22, 2006**

4